GEORGIA KILPATRICK *v.* CONNECTICUT EDUCATION ASSOCIATION, INC.
(8216)

SPALLONE, CRETELLA and LANDAU, Js.

Argued October 3, 1990—decision released January 8, 1991

[1] The owner did not seek an articulation of the trial court's decision.

*Georgia Kilpatrick,* pro se, the appellant (plaintiff).
*William J. Dolan,* for the appellee (defendant).

LANDAU, J. The plaintiff, acting pro se, appeals from the judgment of the trial court upholding two arbitrators' decisions regarding the annual service fee to be paid to the Connecticut Education Association (CEA). The plaintiff challenges the trial court's decision regarding the nonapplicability of General Statutes § 52-416 (a).[1] The plaintiff further claims that the trial court improperly determined that the American Arbitration Association (AAA) rule regarding the time limit for an award was directory and that it improperly applied federal labor law. As an alternate ground upon which the judgment may be affirmed; Practice Book § 4013; the defendant claims that the trial court improperly denied its motions to dismiss.[2] Because these proceedings

---

[1] General Statutes § 52-416 (a) provides: "If the time within which an award is rendered has not been fixed in the arbitration agreement, the arbitrator or arbitrators or umpire shall render the award within thirty days from the date the hearing or hearings are completed, or, if the parties are to submit additional material after the hearing or hearings, thirty days from the date fixed by the arbitrator or arbitrators or umpire for the receipt of the material. An award made after that time shall have no legal effect unless the parties expressly extend the time in which the award may be made by an extension or ratification in writing."

[2] The defendant filed motions to dismiss, challenging the court's subject matter jurisdiction under General Statutes § 52-418. The court was cor-

occurred pursuant to an agency shop arrangement, the trial court properly refrained from applying § 52-416 (a) and properly followed federal labor law and policy. We affirm the trial court's judgment.

The facts are not in dispute. The plaintiff is a teacher employed by the Fairfield board of education but is not a member of the local union, the Fairfield Education Association, Inc., (FEA). This association is the exclusive bargaining representative for Fairfield public school teachers. Members of the FEA are also required to join the CEA and the National Education Association (NEA).

General Statutes § 10-153a (b)[3] authorizes the creation of agency shop agreements whereby a union that is the exclusive representative of a group of employees for the purposes of collective bargaining may charge nonunion employees a service fee to defray the costs of collective bargaining. Pursuant to *Chicago Teachers Union* v. *Hudson,* 475 U.S. 292, 106 S. Ct. 1066, 89 L. Ed. 2d 232 (1986), agency shop arrangements are

---

rect in finding that the procedure is an arbitration as agreed upon by the terms of the controlling instruments and therefore subject to the court's jurisdiction. The arbitration clause in the agreement served as the written submission; *Vail* v. *American Way Homes, Inc.,* 181 Conn. 449, 451, 435 A.2d 993 (1980); and the parties, having agreed to the procedure and having delineated the arbitrator's authority, were bound by those limits. *Waterbury Board of Education* v. *Waterbury Teachers Assn.,* 168 Conn. 54, 62, 357 A.2d 466 (1975); see also *Twin Towers Associates* v. *Gilbert Switzer & Associates,* 4 Conn. App. 538, 540, 495 A.2d 735, cert. dismissed, 197 Conn. 811, 499 A.2d 61 (1985); *Trumbull* v. *Trumbull Police Local 1745,* 1 Conn. App. 207, 211–12, 470 A.2d 1219 (1984).

[3] General Statutes § 10-153a (b) provides in pertinent part: "Nothing in this section or in any other section of the general statutes shall preclude a local or regional board of education from making an agreement with an exclusive bargaining representative to require as a condition of employment that all employees in a bargaining unit pay to the exclusive bargaining representative of such employees an annual service fee . . . which represents the costs of collective bargaining, contract administration and grievance adjustment; and that such service fee be collected by means of a payroll deduction from each employee in the bargaining unit."

permissible as long as certain procedural requirements are met. In addition to requiring adequate information about the basis for the proportionate share and an escrow for the amounts reasonably in dispute, the court articulated a new procedural requirement for a "reasonably prompt decision by an impartial decisionmaker." Id., 307, 310.[4] The CEA has adopted such a procedure in conformity with *Hudson.* See *Andrews* v. *Education Assn. of Cheshire,* 653 F. Sup. 1373 (D. Conn.), aff'd, 829 F.2d 335 (2d Cir. 1987). In addition, our Supreme Court, in a previous action by this plaintiff, has determined that nonunion members may be assessed a service fee not greater than the total dues of the FEA, the CEA and the NEA relating to the costs of collective bargaining, contract administration and grievance adjustment. *Kilpatrick* v. *Board of Education,* 206 Conn. 25, 30, 535 A.2d 1311 (1988).

In its procedure for determining the amount of service fee, the CEA requires that objections to the service fee be raised before December 15 of each year. Once an objection has been raised, the CEA requests the AAA to appoint an arbitrator to hold a hearing in accordance with the AAA's rules for impartial determination of union fees. These rules specify that an arbitrator has thirty days from the close of the proceedings in which to render a decision.

The plaintiff objected to the service fee in the 1986–87 and 1987–88 school years and two sets of hearings, one for each school year, were held in accordance with the CEA's procedure. The first set of hearings was held on March 12, April 4, and April 10, 1987. The parties submitted briefs to the arbitrator on August 10, 1987.

---

[4] The court, although stating that a full administrative hearing is not required, failed to specify what type of a proceeding would fulfill this procedural requirement. The court, however, stated that "an expeditious arbitration might satisfy the requirement . . . . " *Chicago Teachers Union* v. *Hudson,* 475 U.S. 292, 308 n.21, 106 S. Ct. 1066, 89 L. Ed. 2d 232 (1986).

The arbitrator then issued a two part decision with the first part issued on October 13 and the second part issued on November 16, 1987. The second set of hearings, before another arbitrator, was held on March 21 and March 23, 1988. The parties submitted briefs on July 8, 1988, and the arbitrator issued his decision on August 29, 1988. He issued a more detailed opinion on September 20, 1988. The plaintiff objected to the delay of both awards before they were rendered. Both arbitrators attributed the delay to the large amount of evidence and testimony.

The plaintiff filed an application to vacate the first part of the arbitration award for the 1986–87 school year on November 23, 1987. She filed an identical application on December 9, 1987, with respect to part two of the arbitrator's decision. The defendant in turn filed motions to dismiss that were denied. In response to the arbitrator's decision during the 1987–88 school year, the plaintiff filed an application to vacate that award on October 11, 1988. The defendant again filed a motion to dismiss that was denied. The plaintiff sought to vacate these awards based on General Statutes § 52-416 (a), which provides that unless otherwise provided, an arbitrator must render the award within thirty days from the close of the hearing or the submission of additional material after completion of the hearing.

After consolidation of these actions, the trial court, in its memorandum of decision, concluded that General Statutes § 52-416 (a) is not applicable to the present case. In addition, the court concluded that the thirty day time period provided in the agreement itself was directory rather than mandatory and that, pursuant to *Hudson,* all that is required is that a decision be rendered within a "reasonably prompt" time period.

The Connecticut Teacher Negotiation Act, General Statutes §§ 10-153a through 10-153n, specifically authorizes the creation of agency shop arrangements. General Statutes § 10-153a. "Historically, Connecticut statutes dealing with labor relations have been closely patterned after the National Labor Relations Act." *West Hartford Education Assn., Inc.* v. *DeCourcy,* 162 Conn. 566, 578, 295 A.2d 526 (1972). Because the Teacher Negotiation Act is essentially patterned on the National Labor Relations Act, federal judicial interpretations of the federal act and the underlying policies are "of great assistance and persuasive force in the interpretations" of the Connecticut statute. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 503, 522 A.2d 264 (1987); *Dowaliby* v. *Hartford Federation of Teachers, Local 1018,* 180 Conn. 459, 462, 429 A.2d 950 (1980); *West Hartford Education Assn., Inc.* v. *DeCourcy,* supra, 578–79. In addition, labor relations statutes are remedial in nature and as such "should be liberally construed to accomplish [their] objectives." *Board of Education* v. *Connecticut State Board of Labor Relations,* 190 Conn. 235, 241, 460 A.2d 1255 (1983). In light of these precedents, we shall look to federal case law in reviewing the plaintiff's claims regarding the resolution of the payment of the service fee pursuant to the agency shop agreement. In doing so, we conclude that the trial court did not improperly apply federal labor law.

The plaintiff's remaining two claims are interrelated and shall be discussed together. The plaintiff essentially claims that the trial court should not have concluded that the decisions rendered by both arbitrators were timely because General Statutes § 52-416 (a) and the AAA guidelines for issuance of decisions require that an arbitrator render a decision within thirty days from the close of the proceedings.

The defendant cites *West Rock Lodge No. 2120* v. *Geometric Tool Co.,* 406 F.2d 284, 286 (2d Cir. 1968), for the proposition that "any limitation upon the time in which an arbitrator can render his award [is] a directory limitation, not a mandatory one . . . ." *West Rock* involved the issue of whether General Statutes § 52-416 should be incorporated into the federal Labor Management Relations Act. The court held that the Connecticut statute should not be adopted into this federal law. Moreover, the court noted that § 52-416 (a) applies to arbitrations in general, unlike § 31-98 which is a directory time period in the state labor mediation and arbitration statute. *West Rock Lodge No. 2120* v. *Geometric Tool Co.,* supra, 287. The court further determined that it should always be within a court's discretion to uphold a late award "if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay." Id., 286. In reaching its conclusion, the court focused on the underlying goals of federal labor law policy, especially the formation of collective bargaining agreements and the private and relatively speedy settlement of disputes. Id. The court noted that the "private settlement of a dispute is one of the most desired federal goals and is well within the policy of furthering consensual processes." Id.

In essence, the issue before us involves the service fee to be paid pursuant to an agency shop agreement. As in *Abood* v. *Detroit Board of Education,* 431 U.S. 209, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977), where the United States Supreme Court noted that the Michigan statutory agency shop provision promoted the same interests as those found in federal labor law, the Connecticut agency shop provision seeks to promote labor peace and the elimination of free riders.[5] General Stat-

[5] In *Abood,* the Supreme Court reviewed a Michigan statute authorizing the creation of agency shop agreements and held that service charges could

utes § 10-153a (b) requires nonunion members of a bargaining unit "to pay their fair share of the costs of collective bargaining, contract administration and grievance adjustment" to the exclusive bargaining representative. *Kilpatrick* v. *Board of Education,* supra, 29.

Application of General Statutes § 52-416 (a) in the context of an agency shop agreement would be misplaced. The CEA has merely chosen to adopt arbitration as its method of dispute resolution. The only issue to be resolved is the amount of the fee, not whether the fee will be paid. The latter issue has already been affirmatively resolved. See *Kilpatrick* v. *Board of Education,* supra. Applying Connecticut's general arbitration statute would allow the plaintiff to forego paying a service fee while benefiting from the union's collective bargaining negotiations. To allow this would undermine the purpose of agency shop arrangements of furthering the consensual process and decreasing the incidents of free riders.

In accordance with *West Rock,* "it should always be within a court's discretion to uphold a late award if no objection to the delay has been made prior to the rendition of the award or there is no showing that actual harm to the losing party was caused by the delay." *West Rock Lodge No. 2120* v. *Geometric Tool Co.,* supra. Although the plaintiff objected to the delay prior to the rendition of the awards, she has failed to show actual harm. As we have previously noted, the only issue in dispute is the amount of the service fee. Pursuant to

be required only for those activities germane to the cost of negotiating and administering a collective bargaining agreement. *Abood* v. *Detroit Board of Education,* 431 U.S. 209, 235–36, 97 S. Ct. 1782, 52 L. Ed. 2d 261 (1977). In reviewing the Michigan statute, the court noted that the Michigan statute was broadly modeled after federal labor law and that the governmental interests in maintaining labor peace and in minimizing the threat of "freeriders" advanced under the state's agency shop provision were similar to those under federal law. Id., 224.

agency shop arrangements, nonunion employees must pay a service fee to defray the cost of collective bargaining, contract administration and grievance adjustment. The CEA procedures provide for the recalculation of fees and the return of excess amounts after the arbitrator's award has been rendered. See *Andrews* v. *Education Assn. of Cheshire,* 829 F.2d 335, 338 (2d Cir. 1987). In addition, disputed amounts are placed in escrow during the pendency of the proceeding and neither party has the use of the disputed funds. The plaintiff therefore has failed to show actual harm.

We hold that § 52-416 (a) is not applicable to these proceedings, that the time limit for rendering awards contained in the CEA's procedures are directory and that, under the circumstances of this case, the arbitrators' decisions were rendered within a reasonably prompt time period as suggested by federal labor policy and procedure.

The judgment is affirmed.

In this opinion the other judges concurred.